UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

| | |
|---|---|
| FIRST CHOICE ENTERPRISES, INC., dba J&J MAGNET, a South Dakota Corporation, | CIV. |
| Plaintiff, | |
| v. | |
| CITY MAGNETS, INC., a Missouri Corporation; and TOWN-LINK LLC, a Minnesota Limited Liability Company, NICK THOMPSON, an individual, TRENT SNYDER, a individual, MANNY SHELLITO, an individual, KELLY SHELLITO, an individual, VERLIN YARMER, an individual, DON HILL, an individual, and CHAD RAMSEY, an individual. | **FIRST AMENDED COMPLAINT JURY TRIAL DEMANDED** |
| Defendants. | |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

Plaintiff, First Choice Enterprises, Inc., dba J&J Magnet ("J&J Magnet"), for its First Amended Complaint against the Defendants, City Magnets, Inc., ("City Magnet"), Town-Link LLC ("Town Link"), Nick Thompson ("Nick"), Trent Snyder ("Trent"), Manny Shellito ("Manny"), Kelly Shellito ("Kelly"), Verlin Yarmer ("Verlin"), Don Hill ("Don"), and Chad Ramsey ("Chad") states and alleges as follows:

**The Parties**

1.     J&J Magnet is a corporation organized and existing under the laws of South Dakota, with its principal place of business in Platte, South Dakota.

2.     City Magnet is a corporation organized and existing under the laws of Missouri, with its principal place of business in Sunrise Beach, Missouri.

**EXHIBIT A**

3.    Town Link is a limited liability company organized and existing under the laws of Minnesota, with its principal place of business in Sauk Centre, Minnesota.

4.    Nick, Trent, Manny, Kelly, Verlin, Don, and Chad ("Individual Defendants") are individuals believed to reside in Minnesota, Kansas, and/or Missouri.

## Jurisdiction

5.    This is a civil action for unfair competition and false advertising in interstate commerce arising under the laws of the United States, in particular, the Lanham Act, codified at 15 U.S.C. § 1125.  This Court has jurisdiction over this claim under 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121.

6.    This is also a civil action for unfair competition, deceptive business practices, and other state law claims arising from the same operative facts joined with substantially related claims under the Lanham Act.  This Court has jurisdiction over these claims under 28 U.S.C. § 1338(b) or 28 U.S.C. § 1367.

7.    In addition, because of the complete diversity between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, this Court has jurisdiction under 28 U.S.C. § 1332(a).

8.    This Court has personal jurisdiction over Defendants because they transact business in South Dakota, because they have committed acts resulting in the accrual of a tort in South Dakota, and because subjecting them to the jurisdiction of South Dakota is not inconsistent with the federal law of Due Process.

## J&J Magnet and its business

9.    In October 2022, J&J Magnet purchased a direct mail magnetic advertising business from an entity known as C&C Magnet.

4881-1808-5548, v. 2                                                                          **EXHIBIT A**

10.     Since that time, J&J Magnet has operated the business with great success.

11.     J&J Magnet's business model is to sell advertising spaces on magnets, which it then mails to individuals in a local market.  Individuals will typically place the magnet on a conveniently located metal surface, such as a refrigerator door, for quick reference to the advertising businesses' information.  An example of a magnet from J&J Magnet is reproduced here:



12.     J&J Magnet refers to businesses who purchase advertising spaces on the magnets as sponsors.

13.     To sell advertising spaces to sponsors, J&J Magnet primarily relies on direct in-person sales by its sales representatives to local sponsors in each market.

3

**EXHIBIT A**

14.    A market may consist of a single town, multiple towns, a single county, or multiple counties, depending on population density and demand.

15.    Once J&J Magnet sells all of the advertising spaces on a magnet for a given market, it then mails the magnets to individuals residing in the market.

16.    J&J Magnet then does not return to that market to sell advertising space until the renewal date, which is usually two years later, so that its sponsors can typically expect at least two years of exposure on the magnets sent to a given market.

17.    J&J Magnet operates in numerous markets throughout the country, including in South Dakota, North Dakota, Minnesota, Iowa, Missouri, Kansas, Nebraska, Colorado, and Wyoming.

### Defendants and their businesses

18.    City Magnet is headquartered in Missouri and operates a direct mail magnetic advertising business similar to the business operated by J&J Magnet.

19.    According to its website, www.citymagnetinc.com/#, City Magnet operates in forty-three states in the United States, including South Dakota.

20.    Town Link is headquartered in Minnesota and also operates a direct mail magnetic advertising business similar to the business operated by J&J Magnet.

21.    Town Link operates in numerous states, including South Dakota.

22.    City Magnet and Town Link operate jointly or in partnership for purposes of Town Link's operations.

23.    For example, Town Link's magnets list Town Link in the center and City Magnet at the bottom:

4

**EXHIBIT A**



24.    Additionally, upon information and belief, City Magnet is the entity that produces the magnets sent by Town Link, and City Magnet does the invoicing and paperwork for Town Link.

5

25.     The Individual Defendants are employees or sales representatives of City Magnet and/or Town Link, and City Magnet and/or Town Link supply the Individual Defendants with magnets to sell to consumers.

**Defendants and their deceptive business practices**

26.     Since purchasing the business from C&C Magnet, J&J Magnet has discovered a continued pattern and practice of misrepresentations and deceptive business practices made by agents and affiliates of City Magnet and/or Town Link including the Individual Defendants occurring in numerous markets to potential sponsors in multiple states, including South Dakota.

27.     J&J Magnet has gathered extensive evidence and documentation regarding these misrepresentations and deceptive practices.

28.     These misrepresentations have taken different specific forms in each instance, but usually involve one of two general scenarios.

29.     In the first scenario, a City Magnet or Town Link sales representative will tell the potential sponsor/advertiser that C&C Magnet went out of business, that J&J Magnet no longer serves the market in question, or that J&J Magnet is incapable of fulfilling a potential order.  For example, the sales representative will falsely state that J&J Magnet moved to South Dakota and "left 144 markets hanging."

30.     This statement is false and is calculated to persuade the potential sponsor to purchase advertising space on the competing magnets offered by City Magnet and/or Town Link instead of those offered by J&J Magnet.

31.     Based on these misrepresentations, the potential sponsor agrees to purchase advertising on magnets from City Magnet and/or Town Link.

6

**EXHIBIT A**

32.     In the second scenario, a City Magnet or Town Link sales representative misleads the potential sponsor into believing that the sales representative actually works for C&C Magnet, or that the sales representative works for a C&C Magnet successor entity selling advertising on the same magnets previously produced by C&C Magnet.

33.     In one example, a potential sponsor in Broken Bow, Nebraska, reported that Nick Thompson, an owner of Town Link, actually provided his old C&C Magnet business card to give the false impression that the potential sponsor was making a purchase from C&C Magnet.

34.     In another example, a potential sponsor in Lindon, North Dakota, reported that she received a phone call from someone posing as a J&J Magnet employee and agreed to "renew."  Once the potential sponsor found out the company was not, in fact, J&J Magnet, she contacted the sales representative, who replied that all sales are final.

35.     Similarly, there were multiple instances of City Magnet and/or Town Link sales representatives bringing old magnets produced by C&C Magnet for a given market and giving the false impression that the sales representative was there on behalf of C&C Magnet and/or J&J Magnet.

36.     In fact, on some of the contracts that potential sponsors have provided to J&J Magnet, the sales representative from City Magnet and/or Town Link notes that the sponsor was ordering "same as old magnet," i.e., the prior magnet produced by C&C Magnet.

37.     Similarly, J&J Magnet has obtained contracts where the sales representative actually refers to the four-digit magnet number from the bottom left corner of magnets produced by J&J Magnet, further confirming that the City Magnet and/or TownLink sales representative is giving the false impression that the potential sponsor is simply renewing their prior purchase from J&J Magnet and/or C&C Magnet.

7

EXHIBIT A

38.    Regardless of which of the scenarios described above applies, the most common result is that when J&J Magnet arrives in a given market and talks to potential sponsors about renewals, the potential sponsors discover that they did not, in fact, renew with J&J Magnet.

39.    These potential sponsors are confused and upset at being misled by City Magnet's and/or Town Link's sales representatives.

40.    Many of these potential sponsors are further disappointed when they see the magnets from City Magnet and/or Town Link, which have a vertical orientation as opposed to J&J Magnet's horizontal orientation and are printed on inferior and thinner magnets.

41.    The resulting damage to J&J Magnet is apparent.  J&J Magnet either loses a potential sponsor based on improper and deceptive trade practices, or, in some cases, only retains the potential sponsor after offering a significant discount with an extended due date.

42.    J&J Magnet is aware of other deceptive business practices by City Magnet and Town Link dating back to when J&J Magnet purchased the business from C&C Magnet.

43.    For example, as early as September 2020, Nick Thompson sent a $100 payment to a J&J Magnet employee, Samantha Garvey, asking for notice of where and when J&J Magnet would be sending its sales representatives to do direct sales and renewals.

44.    Thompson offered an additional $100 for each such market he was notified of in advance, with the goal that Thompson would send sales representatives from Town Link to each such market before their respective renewal periods with J&J Magnet.

45.    More recently, a City Magnet employee, Manny Shellito, continued to cause confusion about the origin and source of the parties' goods and services when he emailed written materials to potential sponsors, including a potential sponsor in Pine City, Minnesota.

8

EXHIBIT A

46.     Mr. Shellito provided an old magnet produced by C&C Magnet (with an old C&C Magnet advertisement deceptively whited out), and then provided a letter stating that he was with the "original magnet company (City Magnet)," falsely suggesting a connection between C&C Magnet and City Magnet.

47.     The potential sponsor in Pine City who received Mr. Shellito's email declined to renew with J&J Magnet because the potential sponsor did not want to be associated with the ongoing confusion between the companies.

48.     In addition, some of City Magnet's and/or Town Link's sales representatives have harassed several of J&J Magnet's sales representatives through emails, phone calls, and texting.

49.     Most recently, J&J Magnet was provided a poster from a cashier in Laurel, Nebraska, disparaging three J&J Magnet representatives.

50.     Upon information and belief, this poster was posted by one of Town Link's and/or City Magnet's agents.

51.     The Individual Defendants  have each participated in the misconduct described above, and did so at the direction of City Magnet and Town Link.

52.     Each of these individuals is an employee of either or both City Magnet and Town Link.

53.     On May 8, 2023, J&J Magnet, through its counsel, sent a letter to City Magnet and Town Link demanding that they agree to cease these activities by May 24, 2023.  City Magnet and Town Link ignored the letter.

54.     City Magnet and Town Link have continued to induce the Individual Defendants to engage in the infringing conduct described above, including by continuing to supply infringing magnets and providing payment to the Individual Defendants for their infringing acts.

9

**EXHIBIT A**

## Count I – Unfair Competition 15 U.S.C. § 1125(a)
### (Lanham Act § 43(a))

55.    J&J Magnet restates all previous allegations and hereby incorporates them by reference.

56.    The misrepresentations described above were made in connection with City Magnet's and Town Link's  efforts to sell their goods and/or services in commerce, and constitute false or misleading descriptions of fact and/or false or misleading representations of fact, which are likely to deceive as to the origin of City Magnet's and Town Link's goods and/or services.

57.    These misrepresentations were made with the intent to deceive actual and potential consumers and, in fact, deceived actual and potential consumers of City Magnet's and Town Link's  goods and/or services.

58.    These misrepresentations were made by City Magnet's and Town Link's  agents and representatives, including the Individual Defendants, to benefit City Magnet and Town Link.

59.    These misrepresentations were material in that they caused consumers to purchase City Magnet's and Town Link's ' goods and/or services.

60.    These misrepresentations were made in numerous states, including South Dakota, North Dakota, Minnesota, Iowa, Missouri, Kansas, Nebraska, Colorado, and Wyoming.

61.    J&J Magnet has suffered damages as a direct result of these misrepresentations both in the form of lost sales and in reputational harm, the latter of which is difficult, if not impossible, to quantify.

**EXHIBIT A**

## Count II – False Advertising 15 U.S.C. § 1125(a)
### (Lanham Act § 43(a))

62.    J&J Magnet restates all previous allegations and hereby incorporates them by reference.

63.    The misrepresentations described above were made in connection with City Magnet's, Town Link's and the Individual Defendants' efforts to sell their goods and/or services in commerce, and constitute false or misleading descriptions of fact and/or false or misleading representations of fact which, in commercial advertising or promotion, misrepresent the nature, characteristics, qualities, and/or geographic origin of City Magnet and Town Link's  goods and/or services.

64.    These misrepresentations were made with the intent to deceive actual and potential consumers and, in fact, deceived actual and potential consumers of City Magnet's and Town Link's goods and/or services.

65.    These misrepresentations were made by City Magnet's and Town Link's  agents and representatives including the Individual Defendants, to benefit City Magnet and Town Link.

66.    These misrepresentations were material in that they caused consumers to purchase City Magnet's and Town Link's goods and/or services.

67.    These misrepresentations were made in numerous states, including South Dakota, North Dakota, Minnesota, Iowa, Missouri, Kansas, Nebraska, Colorado, and Wyoming.

68.    J&J Magnet has suffered damages as a direct result of these misrepresentations both in the form of lost sales and in reputational harm, the latter of which is difficult, if not impossible, to quantify.

11

**EXHIBIT A**

## Count III—Induced/Contributory Infringement

69.     J&J Magnet restates all previous allegations and hereby incorporates them by reference.

70.     City Magnet and Town Link induced the Individual Defendants to engage in the infringement described, above, including by continuing to supply magnets and material support, assistance, and payments to the Individual Defendants despite knowledge of the infringing nature of the conduct.

71.     The Individual Defendants, through City Magnet's and Town Link's support and supply of product, engaged in the infringement described herein.

72.     J&J Magnet has suffered damages as a direct result of City Magnet's and Town Link's support, encouragement, and payment of the Individual Defendants for their infringing conduct, both the form of lost sales and reputational harm, the latter of which is difficult, if not impossible, to quantify.

## Count IV – Tortious Interference

73.     J&J Magnet restates all previous allegations and hereby incorporates them by reference.

74.     J&J Magnet had valid business relationships or expectancies with the actual and potential sponsors whose renewal periods had not yet arrived.

75.     Defendants were aware of these business relationships or expectancies, and attempted to capitalize upon them by deceiving those actual and potential sponsors.

76.     Defendants intentionally and unjustly interfered with those relationships or expectancies by making the misrepresentations described above.

**EXHIBIT A**

77.    J&J Magnet has suffered damages as a direct result of this interference both in the form of lost sales and in reputational harm, the latter of which is difficult, if not impossible, to quantify.

### Count V – South Dakota Deceptive Trade Practices
### (SDCL § 37-24-6(1))

78.    J&J Magnet restates all previous allegations and hereby incorporates them by reference.

79.    The misrepresentations described above were made in connection with the sale of "merchandise" as defined by SDCL § 37-24-1(7).

80.    These misrepresentations were made with the intent to deceive actual and potential consumers and, in fact, deceived actual and potential consumers of Defendants' goods and/or services.

81.    These misrepresentations were made by Defendants' agents and representatives to benefit Defendants.

82.    These misrepresentations were material in that they caused consumers to purchase Defendants' goods and/or services.

83.    J&J Magnet has suffered damages as a direct result of these misrepresentations both in the form of lost sales and in reputational harm, the latter of which is difficult, if not impossible, to quantify.

### Count VI – South Dakota Unfair Competition

84.    J&J Magnet restates all previous allegations and hereby incorporates them by reference.

85.    The conduct described above further constitutes unfair competition under South Dakota law.

13

EXHIBIT A

86.    Defendants' unfair competition has resulted in benefits inuring to Defendants, which would not have been realized but for Defendants' unfair competition.

87.    J&J Magnet has suffered damages as a direct result of this unfair competition, both in the form of lost sales and in reputational harm, the latter of which is difficult, if not impossible, to quantify.

## Count VII – Civil Conspiracy

88.    J&J Magnet restates all previous allegations and hereby incorporates them by reference.

89.    Defendants agreed to engage in the unlawful and overt misconduct described above with the express purpose and object of improperly and unfairly stealing J&J Magnet's actual and potential sponsors.

90.    This agreement and meeting of the minds between Defendants is demonstrated by Defendants each engaging in a consistent pattern and practice of unlawful and overt misrepresentations and misconduct either themselves or through their agents as described above, which form the predicate unlawful acts to establish Defendants' conspiracy.

91.    J&J Magnet has suffered damages as a direct result of this conspiracy, both in the form of lost sales and in reputational harm, the latter of which is difficult, if not impossible, to quantify.

WHEREFORE, J&J Magnet prays for judgment against Defendants as follows:

1.    For judgment against Defendants in the amount of J&J Magnet's actual damages and an accounting of Defendants' profits related to their unlawful actions;

2.    For a judgment that, given Defendants' willful misrepresentations, this is an exceptional case under the Lanham Act;

14

EXHIBIT A

3.    For all statutory and other damages to which J&J Magnet is entitled, including any presumed or multiple damages as provided by statute or other applicable law;

4.    For all attorneys' fees and costs to which J&J Magnet is entitled whether by statute or other applicable law;

5.    For punitive damages in an amount to be determined by a jury for Defendants' willful and malicious conduct, in reckless disregard of J&J Magnet's rights;

6.    For prejudgment interest on all of J&J Magnet's damages;

7.    For preliminary and permanent injunctive relief enjoining Defendants and their agents from further misrepresentations regarding the origin, source, quality, or characteristics of the parties' respective goods and services, and in particular restraining Defendants from stating or implying any affiliation to C&C Magnet or making disparaging statements regarding J&J Magnet; and

8.    For such and other relief as this Court deems just and equitable.

Dated this ____ day of _____, 2024.

WOODS, FULLER, SHULTZ & SMITH P.C.


By__/s/ Joel E. Engel III_____
    Sander J. Morehead
    Joel E. Engel III
    300 South Phillips Avenue, Suite 300
    Post Office Box 5027
    Sioux Falls, South Dakota 57117-5027
    (605) 336-3890
    *Attorneys for Plaintiff*

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

15

4881-1808-5548, v. 2                                              **EXHIBIT A**