UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FIRST CHOICE ENTERPRISES, INC., A SOUTH DAKOTA CORPORATION; <br><br> Plaintiff, <br><br> vs. <br><br> CITY MAGNETS, INC., A MISSOURI CORPORATION; TOWN-LINK LLC, A MINNESOTA LIMITED LIABILITY COMPANY; TRENT SNYDER, AN INDIVIDUAL; MANNY SHELLITO, AN INDIVIDUAL; KELLY SHELLITO, AN INDIVIDUAL; VERLIN YARMER, AN INDIVIDUAL; DON HILL, AN INDIVIDUAL; CHAD RAMSEY, AN INDIVIDUAL; AND NICK THOMPSON, <br><br> Defendants. | 4:23-CV-04102-RAL <br><br><br> OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT MANNY SHELLITO'S MOTION TO DISMISS |

Pending before the Court is a Motion to Dismiss, Doc. 45, filed by Defendant Manny Shellito ("Shellito"). For the following reasons, Shellito's Motion to Dismiss is denied in part and granted in part.

I.  **Factual Allegations in Complaint**[1]

In October 2022, Plaintiff First Choice Enterprises, Inc., which does business as J&J Magnet ("J&J Magnet"), purchased a direct mail magnetic advertising business from C&C

---

[1] This Opinion and Order makes no findings of fact, but takes as true, at this point, the well-pleaded facts in the Complaint.

1

Magnet. Doc. 33 at 2. J&J Magnet sells space on magnetic advertisements and then mails the magnets to individuals living in a specific market. Id. at 3. Businesses that purchase space on the magnets are called "sponsors." Id. Recipients of the magnets can then place the magnets on various surfaces—for example, a refrigerator door—displaying each of the sponsors' business information. Id. J&J Magnet's primary means of selling space on the magnets is through direct in-person sales by its sales representatives in each market. Id. J&J Magnet's markets consist of "a single town, multiple towns, a single county, or multiple counties, depending on population density and demand." Id. at 4. Once all the space on a magnet for a specific market is occupied, the magnets are mailed out and J&J Magnet does not sell additional advertising space in that market until the renewal date, which is typically two years later. Id. J&J Magnet is a South Dakota corporation based out of Platte, South Dakota, and does business in several states including South Dakota, North Dakota, Minnesota, Iowa, Missouri, Kansas, Nebraska, Colorado, and Wyoming. Id. at 1, 4.

Like J&J Magnet, Defendant City Magnets, Inc. ("City Magnet") is a direct mail magnetic advertising business, operating in several states including South Dakota. Id. at 4. City Magnet partners with Defendant Town-Link, LLC ("Town Link"), another direct mail magnetic advertising business operating in South Dakota, to produce Town Link's magnets and manage Town Link's invoicing. Id. at 5. Defendant Manny Shellito and other named "Individual Defendants" worked for City Magnet. Id. at 8.

According to the Amended Complaint, J&J Magnet, after its purchase of C&C Magnet, discovered "a continued pattern and practice of misrepresentations and deceptive business practices made by agents and affiliates of City Magnet and/or Town Link including the Individual Defendants occurring in numerous markets." Id. at 6. The "pattern and practice" generally took

2

one of two forms. Id. First, a City Magnet or Town Link sales representative would falsely tell a potential sponsor that C&C Magnet went out of business and that J&J Magnet is either out of the market or incapable of fulfilling an order, so that potential sponsors would purchase advertising space from City Magnet and Town Link rather than from J&J Magnet. Id. Second, a City Magnet or Town Link sales representative deceived potential sponsors into believing that the sales representative works for C&C Magnet or a C&C Magnet successor. Id. at 7. For example, City Magnet and Town Link sales representatives would bring old magnets produced by C&C Magnets with them when meeting with potential sponsors, giving the false impression that the sales representatives were with C&C Magnet or J&J Magnet. Id. Some contracts between City Magnet and former sponsors of C&C Magnet contained the order description "same as old magnet." Id. In other contracts, the City Magnet or Town Link sales representative included the same four-digit magnet number listed at the bottom left corner of magnets produced by J&J Magnet, suggesting the sponsor was just renewing their previous purchase from J&J Magnet. Id. In another instance, Shellito contacted by email a potential sponsor in Pine City, Minnesota, and included an old magnet produced by C&C Magnet with the C&C Magnet insignia whited out. Id. at 8-9. Shellito also provided a letter that falsely stated he was with the "original magnet company (City Magnet)." Id. at 9. The potential sponsor ultimately declined to renew with J&J Magnet due to the confusion between the companies. Id.

Both tactics resulted in sponsors being confused and misled. Id. at 8. As a result, J&J Magnet either lost a potential sponsor or retained a sponsor only after offering a discounted rate. Id. Each of the Individual Defendants, including Shellito, participated in the conduct at the direction of City Magnet and Town Link. Id. at 9. In addition to a pattern and practice of misleading potential sponsors, City Magnet and Town Link sales representatives harassed J&J

3

Magnet employees. Id. For example, an agent of City Magnet and Town Link displayed a poster in Laurel, Nebraska, disparaging three J&J Magnet representatives. Id.

In June 2023, J&J Magnet filed a Complaint against City Magnet and Town Link, Doc. 1, then filed the First Amended Complaint in March 2024, adding Shellito and the other Individual Defendants, Doc. 33. The First Amended Complaint alleges claims for unfair competition and false advertising under 15 U.S.C. § 1125(a) (Counts 1 and 2), induced/contributory infringement (Count 3), tortious interference (Count 4), deceptive trade practices under SDCL § 37-24-6(1) (Count 5), unfair competition (Count 6), and civil conspiracy (Count 7). Id. In June 2024, Shellito filed a pro se motion to dismiss, arguing this Court lacks personal jurisdiction over Shellito, that J&J Magnet failed to state claim, and that J&J Magnet lacks standing. Doc. 45. J&J Magnet opposed the motion. Doc. 47.

## II.   Discussion

### A. Personal Jurisdiction

Shellito first argues that exercising jurisdiction over him would violate due process and moves to dismiss for lack of personal jurisdiction. Doc. 45 at 1–2. The plaintiff bears the burden of establishing jurisdiction over a defendant, and the burden does not shift when a defendant challenges jurisdiction. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). To overcome a challenge to personal jurisdiction, a plaintiff must make "a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up and citation omitted). "Where no hearing is held on the motion, we must view the evidence in a light most

4

favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor . . . ." Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).

A court's exercise of personal jurisdiction over a defendant must be proper under the forum state's long arm statute and comport with due process. See Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010); see also Omni Cap. Int'l, Ltd. V. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 108 (1987) (holding federal courts should look to the long arm statutes of the forum state when a federal statute does not provide service of process). Because South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause, the question becomes whether asserting personal jurisdiction over Shellito comports with due process. See Vending v. Kraft, 161 N.W.2d 29, 34 (S.D. 1968). "Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" K-V Pharm. Co., 648 F.3d at 592 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985)). "In giving content to that formulation, the Court has long focused on the nature and extent of the defendant's relationship to the forum State." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 358 (2021) (cleaned up and citation omitted). This focus has led to the recognition of two kinds of personal jurisdiction: specific jurisdiction and general jurisdiction. Id.

A court may exercise specific jurisdiction over a defendant when the cause of action arises from a defendant's contacts with the forum state. See Wells Dairy, Inc., 607 F.3d at 518. General jurisdiction is proper when the defendant's contacts with the forum state are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). An individual is "at home" in their

place of domicile. Ford Motor Co., 592 U.S. at 358-59. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Comp. v. Superior Court of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017).

Viewing the evidence in a light most favorable to J&J Magnet, this Court has general jurisdiction over Shellito. Shellito states in his motion to dismiss that he resides in South Dakota, Doc. 45 at 1, and lists his address as Frederick, South Dakota, id. at 4–7. South Dakota is Shellito's domicile. See Eckerberg v. Inter-State Studio & Publ'g Co., 860 F.3d 1079, 1085 (8th Cir. 2017). Because Shellito is "at home" in South Dakota, it is proper for this court to exercise general jurisdiction over Shellito. See Ford Motor Co., 592 U.S. at 358–59; Goodyear Dunlop, 564 U.S. at 919. Although the alleged incidents may have occurred while Shellito lived in Minnesota, this Court's general jurisdiction reaches to claims unrelated to the forum state where there is general jurisdiction over the defendant. See Bristol-Myers Squibb Comp., 582 U.S. at 262. Thus, Shellito's motion to dismiss for lack of personal jurisdiction is denied.

### B. Failure to State a Claim

Shellito next argues that J&J Magnet failed to state a claim against him because the allegations lack specificity and are based on hearsay. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts must accept the plaintiff's factual allegations as true and make inferences in the plaintiff's favor, but need not accept the plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its

6

face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, the "factual allegations must be sufficient to raise a right to relief above the speculative level." Cook v. George's, Inc., 952 F.3d 935, 938 (8th Cir. 2020) (cleaned up and citation omitted).

### 1. Lanham Act Claims (Counts I and II)

"The Lanham Act was intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in commerce against unfair competition." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767–68 (1992). Section 43(a) of the Lanham Act creates two bases of liability: trademark infringement, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B). See Lexmark Int'l., Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014). The protections of section 43(a) are not limited to registered marks. Thompson Medical Co. v. Pfizer, Inc., 753 F.2d 208 (2d Cir. 1985). J&J Magnet has brought claims under both of Section 43(a)'s theories of liability.[2]

### a. Trademark Infringement (Count I)

Count I of the Amended Complaint claims "unfair competition" under the Lanham Act, citing 15 U.S.C. § 1125 (a)(1)(A). "Section 1125(a)(1)(A) prohibits false representations concerning the [geographic] origin, association, or endorsement of goods or services through the

---

[2] In its Complaint, J&J Magnet characterizes Count 1 as "Unfair Competition." Prior to the Lanham Act, "unfair competition" referred to the area of law governing claims of infringement of unregistered marks under common law, while "trademark law" dealt with registered marks. However, the Lanham Act did away with this distinction. Now "trademark infringement" is considered just one type of claim under the broader field of "unfair competition" law. Although it is common for courts to refer to claims brought under § 1125(a)(1)(A) as "unfair competition," claims of both trademark infringement and false advertising, although distinct, can be accurately referred to as "unfair competition." 1 McCarthy on Trademarks and Unfair Competition § 4:6 (5th ed. 2024).

7

wrongful use of another's distinctive mark, name, trade dress, or other device." American Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103 (8th Cir. 2006). "To prove a trademark infringement claim, a plaintiff must show that it has a valid, protectible mark and that there is a likelihood of confusion between its mark and the marks that the defendants were using." Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 322 (8th Cir. 2018) (cleaned up and citation omitted). The Lanham Act's protections "embrace not just word marks, . . . but also 'trade dress.'" Wal-Mart Stores, Inc. v. Samara Brothers, Inc., 529 U.S. 205, 209–210 (2000). "Trade dress typically refers to a product's design or packaging." Pocket Plus, LLC v. Pike Brands, LLC, 53 F.4th 425, 432 (8th Cir. 2022). "[U]nregistered trade dress is protected under federal Lanham Act § 43(a)(1)(A) under essentially the same rules as are trademarks." 1 J. McCarthy, Trademarks and Unfair Competition § 8:1 (5th ed. 2024). "To prevail on a trade-dress infringement claim, a plaintiff must show that its trade dress is distinctive and nonfunctional and that the trade dress's imitation would result in a likelihood of confusion to consumers regarding its source." Pocket Plus, LLC, 53 F.4th at 432.

As it pertains to the trademark infringement claim, the Amended Complaint is vague in not pleading what constitutes a "distinctive mark, name, trade-dress or other device." See 15 U.S.C. § 1125(a)(1)(A). The Complaint does not state what specific marks are at issue or explain how the marks are protectable. When complaints fail to identify the marks at issue in trademark infringement cases, court have granted motions to dismiss for failure to state a claim. See Coach, Inc. v. Celco Customs Servs. Co., No. CV 11-10787, 2013 WL 12122691, at *5 (C.D. Cal. Oct. 31, 2012) (granting motion to dismiss where plaintiff failed to "clearly identify the trademarks and infringing marks at issue"); Louisiana Pac. Corp. v. James Hardie Bldg. Prods., Inc., No. C-12-3433 SC, 2012 WL 5520394, at *1 (N.D. Cal. Nov. 14, 2012) (holding that "identify[ing] every

trademark which was allegedly infringed . . . is not an overly burdensome requirement"); see also Valoro, LLC v. Valero Energy Corp., No. 14–21694–CIV, 2014 WL 3920035, at *5 (S.D. Fla. 2014) (granting motion for more definitive statement where claimant failed to specify which marks were infringed in trademark infringement). Identifying in the Complaint the specific marks that have allegedly been infringed provides a defendant with adequate notice. See Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) ("The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." (cleaned up and citation omitted)).

The same is true when a complaint fails to allege the elements of trade dress infringement and "'articulat[e] the specific elements which comprise its distinct dress.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 309 (3d Cir. 2014) (quoting Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997). "A plaintiff must [ ] offer a precise expression of the character and scope of the claimed trade dress." GeigTech East Bay LLC v. Lutron Electronics Co., Inc., 352 F. Supp. 3d 265, 274 (S.D.N.Y. 2018). Dismissal for failure to state a claim is appropriate when a complaint fails to specify the distinctive features of the alleged trade dress. See Fair Wind Sailing, Inc., 764 F.3d at 310 ("Because Fair Wind has failed to give Defendants adequate notice of what overall look it wishes to protect, its trade dress claim cannot survive Defendants' motion to dismiss."); Cardinal Motors, Inc. v. H&H Sports Protections USA, Inc., 1:20-cv-07899, 2021 WL 1758881, at *4 (S.D.N.Y. May 4, 2021) (dismissing trade dress infringement claim where plaintiff's allegations were vague and generic). The Amended Complaint includes images of a J&J Magnet for the Platte, South Dakota, area market and of a Town Link/City Magnet for the area of Burwell, Sargent, and Broken Bow, Nebraska. Doc. 33 at

3, 5. But the allegations of the Amended Complaint are unclear on whether J&J Magnet is asserting a trade dress infringement claim under § 1125(a)(1)(A), and if so, what distinctive features of trade dress it wishes to protect. Thus, to the extent Count I of the Amended Complaint is asserting a trademark infringement claim against Shellito, it must be dismissed but this Court would consider a motion to grant leave for a second amended complaint for J&J Magnet to plead trademark infringement.

### b. False Advertising (Count II)

Count II of the Amended Complaint alleges false advertising under the Lanham Act, citing 15 U.S.C. § 1125(a)(1)(B). Section 1125(a)(1)(B) of the Lanham Act "prohibits commercial advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic origin of the advertiser's or another person's goods, services, or commercial activities." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998). To establish a false advertising claim, a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

Id. at 1180. Two types of false statements may give rise to a false advertising claim: (1) a "literally false" statement; or (2) a "literally true" statement that "implicitly conveys a false message, is misleading, or is likely to deceive consumers." Buetow v. A.L.S. Enters., Inc., 650 F.3d 1178, 1185 (8th Cir. 2011). A literally false statement is "an explicit representation of fact that on its face conflicts with reality." Eli Lilly and Company v. Arla Foods, Inc., 893 F.3d 375, 382 (7th Cir. 2018).

Here, J&J Magnet has pleaded facts sufficient to allow this Court to draw the reasonable inference that Shellito could be liable for false advertising. J&J Magnet alleges that City Magnet and Town Link sales representatives, including Shellito, told potential and actual customers that they were sales representatives for J&J Magnet and that they were offering advertising space on the same magnets produced by C&C Magnet. J&J Magnet alleges that Shellito told a potential customer that he was with the "original magnet company" and that he provided an old C&C Magnet to the customer with C&C Magnet whited out. These are literally false statements because Shellito was a sales representative of City Magnet, not C&C Magnet. According to the Amended Complaint, these statements have led customers to be deceived or confused about the companies offering the services, resulting in customers either choosing not to renew advertising space with J&J Magnet or agreeing to renew after J&J Magnet offers a discount. Thus, J&J Magnet has stated a claim against Shellito for false advertising.

### 2. Induced/Contributory Infringement (Count III)

Count III of the Amended Complaint alleges induced/contributory infringement. The Amended Complaint leaves it unclear whether J&J Magnet is alleging all defendants, including Individual Defendants, are liable under a theory of contributory infringement or just City Magnet and Town Link for inducing the Individual Defendants to engage in infringement. Doc. 33 at 12. J&J Magnet in its opposition to Shellito's motion to dismiss implies that the Individual Defendants are liable for contributory infringement. Doc. 47 at 6. Accordingly, this Court will address Count III as it concerns Shellito.

The Lanham Act incorporates common law tort and agency principles. See Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 103 (2d Cir. 2010) ("Contributory trademark infringement is a judicially created doctrine that derives from the common law of torts."); Hard Rock Café Licensing

11

Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1148–49 (7th Cir. 1992) ("[W]e have treated trademark infringement as a species of tort and have turned to the common law to guide our inquiry into the appropriate boundaries of liability."). Thus, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc., 456 U.S. 844, 854 (1982). Contributory infringement has been extended to service providers. See Hard Rock Café Licensing Corp., 955 F.2d at 1148–49; Slep-Tone Ent. Corp. v. Golf 600 Inc., 193 F. Supp. 3d 292, 296 (S.D.N.Y. 2016). However, the service providers must exercise "control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 984 (9th Cir. 1999). To prevail on a contributory infringement theory of liability, a plaintiff must show that a defendant "intentionally induce[d] another to infringe a trademark." Inwood Laby's, Inc., 456 U.S. at 854.

Here, J&J Magnet has not alleged Shellito induced another to infringe on J&J Magnet's marks. Rather, J&J Magnet has alleged that City Magnet and Town Link induced the Individual Defendants to infringe on J&J Magnet's marks. Doc. 33 at 12. Thus, to the extent J&J Magnet alleges in Count III of the Amended Complaint Shellito is liable under contributory infringement, that portion of the claim must be dismissed.

### 3. Tortious Interference (Count IV)

To establish a claim for tortious interference with business relationships or expectancy under South Dakota law, J&J Magnet must show: "1) the existence of a valid business relationship or expectancy, 2) knowledge by the interferer of the relationship or expectancy, 3) an intentional

and unjustified act of interference on the part of the interferer, 4) proof that the interference caused the harm sustained, and 5) damage to the party whose relationship or expectancy was disrupted." Hayes v. N. Hills Gen. Hosp., 590 N.W.2d 243, 248 (S.D. 1999). J&J Magnet has stated a claim for tortious interference against Shellito in Count IV. Taking as true the well-pleaded allegations of J&J Magnet's Amended Complaint, J&J Magnet had valid business relationships or expectancies with actual and potential sponsors, including a potential sponsor in Pine City, Minnesota. Shellito contacted the potential sponsor in Pine City, falsely suggesting that he was an employee of J&J Magnet by stating he was with the "original magnet company." Shellito's communication caused confusion, and as a result, the Pine City sponsor declined to renew its sponsorship with J&J Magnet. Thus, J&J Magnet has pleaded facts sufficient to allow this Court to draw the reasonable inference that Shellito is liable for tortious interference.

### 4. South Dakota Deceptive Trade Practices (Count V)

J&J Magnet's Amended Complaint next alleges Shellito's conduct violated the South Dakota Deceptive Trade Practices and Consumer Protection Act, citing to S.D.C.L. §§ 37-24-6(1) and 37-24-1(7). The Act provides that it is a deceptive act or practice for any person to:

> Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise or the solicitation of contributions for charitable purposes, regardless of whether any person has in fact been misled, deceived, or damaged thereby

S.D.C.L. § 37-24-6(1). However, this section is "a criminal proscription under which a plaintiff in a civil action has no individual rights of enforcement." Rainbow Play Sys., Inc. v. Backyard Adventure, Inc., No. CIV. 06–4166, 2009 WL 3150984, at *7 (D.S.D. Sept. 28, 2009). Instead, S.D.C.L. § 37-24-31 allows any individual adversely affected by acts declared unlawful under § 37-24-6 "to bring a civil action for the recovery of actual damages suffered as a result of such act or practice." Thus, to state a claim, J&J Magnet must plead that its damages were "proximately

13

caused by [the] alleged violation[] of the Act." Nygaard v. Sioux Valley Hosps. & Health Sys., 731 N.W.2d 184, 197 (S.D. 2007). Moreover, a claim under § 37-24-31 requires "proof of an intentional misrepresentation or concealment of a fact on which *plaintiff* relied and that caused an injury to plaintiff." Nw. Pub. Serv., a Div. of Nw. Corp. v. Union Carbide Corp., 236 F. Supp. 2d 966, 973–74 (D.S.D. 2002) (emphasis added); see also Cheval Int'l v. Smartpak Equine, LLC, CIV. 14-5010, 2016 WL 1064496, at *12 (D.S.D. Mar. 15, 2016) (granting summary judgment for defendant on plaintiff's claim under South Dakota Deceptive Trade Practices Act where plaintiff failed to allege that it relied on defendant's alleged misrepresentations).

J&J Magnet's Amended Complaint fails to state a claim under the South Dakota Deceptive Trade Practices and Consumer Protection Act. In its Complaint, J&J Magnet alleges that Shellito's alleged misrepresentations deceived J&J Magnet's actual and potential consumers. J&J Magnet does not allege that it suffered actual damages as a result of its own reliance on any of Shellito's misrepresentations. Thus, J&J Magnet's claim under the South Dakota Deceptive Trade Practices and Consumer Protection Act against Shellito is dismissed.

### 5. South Dakota Unfair Competition (Count VI)

J&J Magnet tersely alleged "South Dakota Unfair Competition" in Count VI of the Amended Complaint. The Supreme Court of South Dakota has noted that the "[t]he tort of unfair competition does not have specific elements;" rather, "it describes a general category of torts which courts recognize to protect commercial interests." Qwest Comm'ns Corp. v. Free Conferencing Corp., 837 F.3d 889, 898 (8th Cir. 2016) (citing Setliff v. Akins, 616 N.W.2d 878, 887–88 (S.D. 2000)). Thus, "damages for unfair competition results [sic] from satisfying the elements of an underlying tort." Setliff, 616 N.W.2d at 887–88. Encompassed in the category of torts constituting unfair competition is tortious interference with business relations or expectancy. Id. at 888 (citing

14

United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1982)). As discussed above, J&J Magnet has alleged sufficient facts to state a claim against Shellito for tortious interference with business relations or expectancy, so to that limited extent, J&J Magnet has stated a claim for damages within the general category of unfair competition. See Copperhead Agric. Prods., LLC v. KB Ag Corp., LLC, No. CIV. 18-4127, 2019 WL 7038241 at *7 (D.S.D. Dec. 20, 2019) (holding that the plaintiff's claim for tortious interference serves as a basis for the plaintiff's unfair competition claim). "The unfair competition claim is coterminous with and subsumed within the tortious interference with business expectancy claim; there is no separate unfair competition claim . . . ." Venture Commc'ns Coop., Inc. v. James Valley Coop. Tel. Co., 492 F. Supp. 3d 946, 964 (D.S.D. 2020). Count VI is subject to dismissal to the extent that it seeks to state any separate cause of action beyond tortious interference with business relations or expectancy.

### 6. Civil Conspiracy (Count VII)

Count VII of the Amended Complaint alleges civil conspiracy. To establish a prima facie case of civil conspiracy under South Dakota law, a plaintiff must prove: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Setliff v. Atkins, 616 N.W.2d 878, 889 (S.D. 2000). "[C]ivil conspiracy is not an independent cause of action, but is sustainable only after an underlying tort claim has been established." Selle v. Tozser, 786 N.W.2d 748, 756 (S.D. 2010). "If plaintiffs fail to establish an underlying tort claim, there is no claim of civil conspiracy remaining." NDN Collective v. Retsel Corp., 5:22-cv-5027, 2023 WL 8480789, at *7 (D.S.D. Dec. 7, 2023). Further, civil conspiracy is "only a theory to establish [a defendant's] vicarious liability for the damages caused by the underlying tort." Selle, 786 N.W.2d at 756. "If a defendant is found liable for the

underlying tort itself, then it is unnecessary to 'consider whether he may have also been vicariously liable for those damages under a civil conspiracy theory.'" Berg v. Johnson & Johnson, CIV. 09-4179, 2013 WL 12411821, at *1 (D.S.D. Sept. 12, 2013) (quoting Selle, 786 N.W.2d at 756).

J&J Magnet has sufficiently pleaded underlying tort claims—tortious interference and false advertising—against Shellito. Although J&J Magnet alleges Shellito is directly liable for the underlying torts (which would undermine a claim for vicarious liability for civil conspiracy), J&J Magnet is permitted to set forth alternative theories for liability at the pleading stage. See Silva v. Metropolitan Life Ins. Co., 762 F.3d 711, 726 (8th Cir. 2014) ("[U]nder [federal pleading] rules, a plaintiff may plead claims hypothetically or alternatively."). Where J&J Magnet's civil conspiracy claim runs into trouble, however, is with satisfying the first element of the prima facie case for civil conspiracy: two or more persons. South Dakota law recognizes the intra-corporate conspiracy doctrine. Gantvoort v. Ranschau, 973 N.W.2d 225, 240 (S.D. 2022). Under the intra-corporate conspiracy doctrine, "a corporate employer and employee cannot conspire with each other because a corporation cannot conspire through its agents when the agent is acting within the scope of employment." Id. The doctrine recognizes the agent and the corporation as a single actor. Id. at 241.

The Amended Complaint alleges that Shellito conspired with City Magnet to commit the tortious acts. At the time the alleged tortious activities occurred, Shellito was an employee of City Magnet. See Doc. 33 at 8. As an employee, Shellito presumably was an agent of City Magnet. The Amended Complaint further alleges that Shellito engaged in the tortious activities while soliciting business from potential sponsors for City Magnet and did so at the direction of City Magnet. Shellito's conduct, according to the Amended Complaint, was committed within the

scope of his employment with City Magnet. Under the intra-corporate conspiracy doctrine, Shellito cannot conspire with City Magnet as a matter of law.

J&J Magnet also alleged that Town Link was a part of this conspiracy, so at least in theory Shellito may have conspired with a non-employer in Town Link. Yet, the Amended Complaint alleges that City Magnet and Town Link operated "jointly or in partnership." Under South Dakota law, "[e]ach partner is an agent of the partnership for the purpose of its business." SDCL § 48-7A-301. Applying the same agency principles underlying the intra-corporate conspiracy doctrine, J&J Magnet's claim of a civil conspiracy against Shellito may again fall short. However, this Court is not inclined, at this stage, to assume a legal partnership existed between J&J Magnet and Town Link or to determine whether such a partnership precludes a claim for civil conspiracy involving employees of each entity. Such a decision probably should await a motion for summary judgment. Accordingly, though skeptical of the claim, this Court will not dismiss Count VII against Shellito.

### 7. Hearsay

Shellito also argues that J&J Magnet failed to state a claim because the allegations are based on hearsay. However, the Federal Rules of Evidence, including the rule against hearsay, do not apply at the pleading stage. See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6).").

### C. Standing

Finally, Shellito argues that the case should be dismissed because J&J Magnet was not registered to do business in Minnesota and several other states. Shellito frames this argument as "lack of standing," but, this is more appropriately framed as a lack of capacity defense. Thus, this

Court will treat this as a motion to dismiss for lack of capacity. See Brown v. Fifth Judicial Dist. Drug Task Force, 255 F.3d 475 (8th Cir. 2001) (affirming dismissal of case where defendant lacked the capacity to be sued); St. Paul Fire and Marine Ins. Co. v. Farner, 648 F.2d 489, 490 n.1 (8th Cir. 1981) (stating that a lack of capacity defense is properly raised by a Rule 12(b)(6) motion). Under Rule 17(b) of the Federal Rules of Civil Procedure, a corporation's capacity to sue is determined "by the law under which it was organized." Here, J&J Magnet is a South Dakota corporation registered in South Dakota. Thus, South Dakota law determines J&J Magnet's capacity to sue. Under SDCL § 47-1A-302, a South Dakota corporation has the power to "sue and be sued." The provision does not prohibit a corporation from bringing lawsuits involving matters that occurred outside of South Dakota. Thus, J&J Magnet has the capacity to bring this current action, and the motion to dismiss for "lack of standing" is denied.

Shellito includes arguments that the lawsuit is frivolous, defamatory and harassing, leading to Shellito experiencing health issues and lost income. For the reasons explained, the Amended Complaint states some causes of action against Shellito and thus is not frivolous. If Shellito believes he has grounds to sue J&J Magnet for his claimed injury, he can raise those in a counterclaim filed with his answer.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Shellito's motion to dismiss, Doc. 45, is denied in part and granted in part. Shellito's motion to dismiss for failure to state a claim is granted in part and denied in part as explained in this opinion and order. Shellito's motion to dismiss for lack of personal jurisdiction and lack of capacity is denied. It is finally

ORDERED that Shellito has 14 days from receipt of this opinion and order to answer or otherwise respond to the Complaint.

DATED this 21st day of November, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE