UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FIRST CHOICE ENTERPRISES, INC., A SOUTH DAKOTA CORPORATION; <br><br> Plaintiff, <br><br> vs. <br><br> TOWN-LINK LLC, A MINNESOTA LIMITED LIABILITY COMPANY; AND MANNY SHELLITO, AN INDIVIDUAL; <br><br> Defendants. <br><br> MANNY SHELLITO; <br><br> Counterclaim Plaintiff, <br><br> vs. <br><br> FIRST CHOICE ENTERPRISES, INC., A SOUTH DAKOTA CORPORATION; JEFF OLSON; CORY RAMSEY; AND JED LINDSTROM; <br><br> Counterclaim Defendants. | 4:23-CV-04102-RAL <br><br><br><br> OPINION AND ORDER GRANTING COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff First Choice Enterprises, d/b/a J&J Magnet (J&J Magnet), brought this suit against Manny Shellito, Town-Link, and other, now-dismissed defendants. J&J Magnet alleged that Shellito and other defendants engaged in unfair competition and false advertising in violation of the Lanham Act, induced/contributory infringement, tortious interference, deceptive trade practices and unfair competition in violation of South Dakota law, and civil conspiracy. Doc. 33.

1

Shellito filed two motions to dismiss. Docs. 45, 46. This Court denied Shellito's motion to dismiss for lack of personal jurisdiction and lack of capacity but granted in part Shellito's motion to dismiss for failure to state a claim: this Court dismissed the claims for trademark infringement (Count I), induced/contributory infringement (Count III), and deceptive trade practices in violation of South Dakota law (Count V) as against Shellito. Doc. 57. Shellito then filed a pro se counterclaim alleging defamation (libel and slander), tortious interference with business relations, and intentional infliction of emotional distress against J&J Magnet as well as Jed Lindstrom, Jeff Olsen, and Cory Ramsey, who are affiliated with J&J Magnet.[1] Doc. 69 at 2–3.

On January 9, 2026, Counterclaim Defendants J&J Magnet, Jed Lindstrom, Jeff Olsen, and Cory Ramsey (collectively referred to as Counterclaim Defendants) filed a Motion for Judgment on the Pleadings or Alternatively for Summary Judgment on the counterclaim with an accompanying Memorandum in Support and Statement of Undisputed Material Facts in accordance with the District of South Dakota's Civil Local Rule 56.1A. Docs. 85, 86, 87, 88. Local Rule 7.1B requires an opposing party to serve and file a responsive brief on or before 21 days after service of a motion. D.S.D. Civ. LR 7.1(B). As of January 30, 2026, 21 days after the service of Counterclaim Defendants' filings, Counterclaim Plaintiff Manny Shellito had not filed a response to the motion or the statement of undisputed material facts. As of the date of this Opinion and Order, Shellito still has not done so. For the reasons discussed below, this Court grants summary judgment to the Counterclaim Defendants and dismisses Shellito's counterclaim with prejudice.

---

[1] Shellito's Counterclaim lists Jeff Olson as a counterclaim defendant. See Doc. 69. It appears that the correct spelling for this Counterclaim Defendant's last name is Olsen. See Doc. 76-1 at 7. The record also reflects two different first names for Ramsey—Chad and Cory. Compare Doc. 69 with Doc. 33. It appears that Ramsey's correct first name is Cory. See Doc. 76-1 at 6–7, 11. This Court will use the correct name and spelling for the Counterclaim Defendants.

2

## I.      Facts

Because Shellito did not submit a response to Counterclaim Defendants' filings, "[a]ll material facts set forth in [Counterclaim Defendants'] statement of material facts [are] deemed to be admitted," under this Court's Civil Local Rule 56.1.D, and the following facts are therefore undisputed. See D.S.D. Civ. LR 56.1(D); Fed. R. Civ. P. 56(e); Thompson v. Dakota S. Ry. Co., No. 3:17-CV-03028, 2019 WL 5558378, at *1 (D.S.D. Oct. 28, 2019). Many of these facts are acknowledged in Shellito's filings of record.

In October 2022, J&J Magnet purchased a direct mail magnetic advertising business from C&C Magnet. Doc. 86 at 2. Shellito worked for "C&C Magnet as a sales representative but left the company just before the business changed hands." Id. (citing Doc. 75 ("[A] week after I stepped away from C&C, it was handed over to Jeff Olsen, another sales rep.")). Shellito then began providing similar sales representative services to City Magnet. Id. (citing Doc. 75 "After leaving C&C, I reached out to City Magnet . . . . It wasn't until after I began working at City Magnet that I learned the whole story.").

In June 2023, J&J Magnet sued City Magnets, Inc. and Town-Link, LLC. Id. (citing Doc. 1). In March 2024, J&J Magnet amended its Complaint by stipulation to add individual defendants, including Shellito. Id. (citing Doc. 33). Shellito moved to dismiss pro se on two different grounds, and this Court denied in part and granted in part Shellito's motion to dismiss for failure to state a claim as detailed above. Id. (citing Docs. 45 and 57). In its decision, "[this] Court stated that [J&J Magnet's] lawsuit was 'not frivolous.'" Id. at 3 (citing Doc. 57 at 18). Shellito then filed a pro se Answer with a request for additional time to file a counterclaim, which this Court denied. Id. (citing Docs. 64 and 65).

Shellito filed a pro se counterclaim. Id. (citing Doc. 69). Shellito attached a number of exhibits to his counterclaim and claimed defamation (libel and slander), tortious interference with business relations, and intentional infliction of emotional distress alleging that (1) J&J Magnet "and its representatives knowingly spread false statements regarding [Shellito's] business practices, which damaged his reputation and caused financial harm"; (2) J&J Magnet's "interference prevented [Shellito] from conducting business freely, leading to lost clients, sponsorships, and business opportunities"; and (3) J&J Magnet and its representatives'[2] "persistent harassment and interference have caused [Shellito] severe emotional suffering, including depression, inability to work, and drastic health decline." Doc. 69 at 3. Shellito attached a number of texts, emails, product images, postal receipts, employment record, and an audio recording and partial transcript of a three-way phone call between Shellito, Olsen, and a co-worker, Nick Thompson, a now-dismissed defendant named in the Amended Complaint and former Managing Member of Town-Link. See Doc. 69 at 4; Doc. 69-1; Doc. 69-2.

Shellito continued to file miscellaneous pro se filings, including a Response to the Reply to the Counterclaim, Doc. 72, a Personal Impact Statement, Doc. 73, a Statement of Financial Hardship, Doc. 74, a Sealed Impact Statement, Doc. 75, a Motion to Compel, Doc. 76, which was denied, Doc. 80, and a Reply to Plaintiff's Silence and Failure to Communicate, Doc. 78.[3] Doc.

---

[2] Shellito goes back and forth between referring to the Counterclaim Defendants as "Plaintiff and its representatives" and "Defendants" but this Court has liberally construed his pro se filing to refer to the same group—J&J Magnet along with Jed Lindstrom, Jeff Olsen, and Cory Ramsey. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

[3] This Court has reviewed the counterclaim, the exhibits attached to the counterclaim, the personal impact statement, the statement of financial hardship, the sealed impact statement, the motion to compel, and the reply to Plaintiff's silence and failure to communicate. The personal impact statement, the statement of financial hardship, the sealed impact statement, and declarations attached to the motion to compel are all documents signed by Shellito, or his wife, Tisa Shellito. See Doc. 73; Doc. 74; Doc. 75; Doc. 76-1 at 20–25. Exhibit H-B Affidavit of Emotional and

4

86 at 3. In their undisputed statement of facts, Counterclaim Defendants highlight that with respect to Shellito's defamation claim, "[d]espite filing multiple documents with the Court, including, the Miscellaneous Filings, Shellito has never specifically identified any allegedly false statements of objective fact that have been made, who, specifically, made any false statements, when the statements were made, or to whom." Id. Counterclaim Defendants further note that Shellito "has never produced any evidence of what false statements of objective fact of any of the Counter[claim] Defendants made to any person, when any such statements were made, or to whom." Id. at 5 (citing Docs. 69, 72, 73, 74, 75, 77).

As to his tortious interference claim, the statement of undisputed material facts states that "[n]owhere in his Counterclaim (or his Miscellaneous Filings) does [Shellito] state who he had business relationships with, or how [J&J Magnet] or its representatives 'interfered' with those relationships (or what made that interference 'intentional and unjustified')," with the exception of "a single possible business relationship with 'Lion Home Services' that he claims a person named 'Leslie' interfered with." Id. at 4 (citing Doc. 75 at 2).[4] Counterclaim Defendants' statement of undisputed material facts includes that Shellito "has presented no evidence regarding what any

---

Physical Impact submitted in support of the motion to compel is signed by Tisa Shellito and notarized. Doc. 76-1 at 23. Exhibit H-C Affidavit of Impact Statement submitted in support of the motion to compel is signed by Manny Shellito and notarized. Doc. 76-1 at 24.

[4] In his impact statement, Shellito wrote,

> One such instance involved Leslie and Lion Home Services, where Leslie came in 2 months before it was time to renew the contracts. The interference almost cost me a vital business connection. I dropped the price and postpone [sic] the production & release of the magnet, per Lions request. In doing so, a full magnet didn't get released. A key event in the destruction of my career.

Doc. 75 at 2. This Court is unsure who Leslie is or what her connection is to J&J Magnet or its named representatives.

moving party has done to 'interfere' in improper and unjustified ways with any of his business relationships." Id. at 5 (citing Docs. 69, 72, 73, 74, 75, 77).

As to his intentional infliction of emotional distress claim, Counterclaim Defendants write in their statement of undisputed material facts, Shellito "does not identify any specific 'harassing conduct.'" Id. at 4 (citing Doc. 69 at 2, ¶ 4C). Shellito's spouse referred to a business trip where "she and Shellito were 'stalked and chased across multiple towns," but she does not explain when, where this occurred, what the facts and circumstances of the alleged 'tailing' were, or what, specifically, any particular Counter[claim] Defendant was doing." Id. (quoting Doc. 73). In his motion to dismiss, Shellito previously referred to police reports on the alleged harassment he had filed, but he "did not state who the reports were about, what the reported conduct was, what, if any, outcome arose from those reports." Id. at 4–5 (citing Doc. 45 at 3, ¶ 4C). In his impact statement, Shellito "says he 'was chased across Colorado and Wyoming—harassed online, followed in person,' but does not say when this occurred, who did the 'chasing[,]' 'harassing[,]' or 'following,' or, more importantly, what specific things any person did that would support those allegations." Id. (quoting Doc. 75). Counterclaim Defendants conclude in their statement of undisputed material facts that "[a]lthough [Shellito] has alleged that he was followed, harassed, chased, etc. by one or more of the Counterclaim Defendants, he has provided no information regarding the timing, facts, or circumstances of these events." Id.

As noted above, Shellito did not file a response to the motion or dispute any of the material facts contained in the Counterclaim Defendants' statement.

## II.    Legal Standard

Counterclaim Defendants have filed a motion for judgment on the pleadings, or in the alternative, a motion for summary judgment. Doc. 85. This Court will decide the motion on

summary judgment grounds. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011)).

A party opposing a properly supported motion for summary judgment "has an affirmative burden to designate specific facts creating a triable controversy." Garden v. Cent. Neb. Hous. Corp., 719 F.3d 899, 906 (8th Cir. 2013) (quoting Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004)). "To avoid summary judgment, a nonmoving party may not rely solely on the allegations in the complaint but must substantiate his allegations with sufficient probative evidence." Prieor Franklin Childers v. Rhode, No. 4:22-CV-04088, 2024 WL 4625281, at *6 (D.S.D. Oct. 30, 2024) (citing Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.    Discussion

### A. Choice of Law

"The first step the court must take is to determine what choice-of-law rules apply." Jacobs ex rel. Est. of Jacobs v. Evangelical Lutheran Good Samaritan Soc., 849 F. Supp. 2d 893, 896 (D.S.D. 2012) (citing Klipsch, Inc. v. WWR Tech., Inc., 127 F.3d 729, 733 (8th Cir. 1997)). "A federal court exercising supplemental jurisdiction over state-law claims in a federal-question lawsuit must follow the choice-of-law rules of the forum state." Am. Online, Inc. v. Nat'l Health Care Disc., Inc., 121 F. Supp. 2d 1255, 1268 (N.D. Iowa 2000) (collecting cases)); see also Barclay v. Icon Health & Fitness, Inc., No. 19-CV-2970, 2022 WL 486999, at *9 (D. Minn. Feb. 17, 2022) (collecting cases). This Court has supplemental jurisdiction over Shellito's counterclaim, which has been brought in a suit governed by federal question jurisdiction. See Docs. 33, 69. Because this action was filed in South Dakota, this Court will apply the South Dakota choice-of-law rules.

All of Shellito's claims are torts. See Doc. 69. "South Dakota has [] adopted the most significant relationship approach for torts." S.D. Wheat Growers Ass'n v. Chief Indus., Inc., 337 F. Supp. 3d 891, 902 (D.S.D. 2018) (citing Chambers v. Dakotah Charter, Inc., 488 N.W.2d 63, 68 (S.D. 1992)); see also Chambers, 488 N.W.2d at 68 ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in [Restatement (Second) of Conflict of Laws] § 6."). The counterclaim's statement of facts and attached exhibits refer to locations in South Dakota, Wyoming, Colorado, and Minnesota. See Doc. 69 at 3; Doc. 69-1 at 3–7; Doc. 69-1 (Exhibit D – Audio Recording). The claims themselves do not specify where the alleged torts occurred. See Doc. 69 at 2.

8

Counterclaim Defendants have analyzed the claims within the counterclaim under South Dakota law. See Doc. 88 at 5 (citing S.D.C.L. §§ 20-11-2, 20-11-3, 20-11-4; Manuel v. Wilka, 610 N.W.2d 458, 464–65 (S.D. 2000)), 6–7 (citing Selle v. Tozser, 786 N.W.2d 748, 753 (S.D. 2010); St. Onge Livestock Co., Ltd. v. Curtis, 650 N.W.2d 537, 541 (S.D. 2002); Table Steaks v. First Premier Bank, N.A., 650 N.W.2d 829, 835 (S.D. 2002)), 7–8 (citing Harvey v. Regional Health Network, Inc., 906 N.W.2d 382, 394 (S.D. 2018)). Shellito has not responded to this pending motion and therefore has not disputed the Counterclaim Defendants' position that South Dakota law applies. Therefore, this Court will analyze Shellito's claims under South Dakota law.

## B. Defamation

The first claim of Shellito's counterclaim alleges that J&J Magnet and its representatives engaged in defamation, both libel and slander, by knowingly spreading false statements regarding Shellito's business practices, which damaged his reputation and caused financial harm. Doc. 69 at 3. Under South Dakota law, "[d]efamation is effected by: (1) Libel; or (2) Slander." S.D.C.L. § 20-11-2; Schwaiger v. Avera Queen of Peace Health Servs., 714 N.W.2d 874, 878 (S.D. 2006). Libel is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." S.D.C.L. § 20-11-3. Slander, on the other hand, is defined as

a false and unprivileged publication, other than libel, which:

(1) Charges any person with crime, or with having been indicted, convicted, or punished for crime;
(2) Imputes to him the present existence of an infectious, contagious, or loathsome disease;
(3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with

9

reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;

(4) Imputes to him impotence or want of chastity; or

(5) By natural consequence, causes actual damage.

Id. § 20-11-4. "In order to prove a slander case, there must be a communication of an objective fact that is false." Manuel, 610 N.W.2d at 465.

Counterclaim Defendants are entitled to summary judgment on the libel claim. In the undisputed statement of material facts, J&J Magnet highlighted that "Shellito has never specifically identified any allegedly false statements of objective fact that have been made, who, specifically, made any false statements, when the statements were made, or to whom." Doc. 86 at 3. As the party opposing a properly supported motion for summary judgment, Shellito "has an affirmative burden to designate specific facts creating a triable controversy." Garden, 719 F.3d at 906 (quoting Midwest Oilseeds, Inc., 387 F.3d at 714). Here, Shellito would bear the burden at trial of showing that J&J Magnet and its representatives made a false and unprivileged publication, and that false and unprivileged publication exposed Shellito to hatred, contempt, ridicule, or obloquy, or which caused him to be shunned or avoided, or which had a tendency to injure him in his occupation. See S.D.C.L. § 20-11-3. Because Shellito has failed to come forward with any evidence on this issue, summary judgment in favor of the Counterclaim Defendants on the libel claim is appropriate. See Garden, 719 F.3d at 906 (granting summary judgment against nonmoving party was proper where nonmoving party failed to offer any evidence on issues it would be required to prove at trial); Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 831 (8th Cir. 2006) ("When a party . . . has the burden of proof on an issue, it must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion.").

10

Similarly, Counterclaim Defendants are entitled to summary judgment on the slander claim. Here, Shellito also "has an affirmative burden to designate specific facts creating a triable controversy," as Shellito would bear the burden at trial of showing that J&J Magnet and its representatives made a "false and unprivileged publication, other than libel," and that "[t]ends directly to injure him in respect to his . . . business, either by imputing to him general disqualification . . ., or by imputing something with reference to his . . . business that has a natural tendency to lessen its profit;" or "[b]y natural consequence, causes actual damage." See Garden, 719 F.3d at 906; S.D.C.L. § 20-11-4. Additionally, Shellito would have to show "a communication of an objective fact that is false." Manuel, 610 N.W.2d at 465. Because Shellito has failed to come forward with any evidence on this issue, summary judgment in favor of the Counterclaim Defendants on the slander claim is appropriate. See Garden, 719 F.3d at 906; Crotty, 455 F.3d at 831. Accordingly, this Court grants the motion for summary judgment to the Counterclaim Defendants on the defamation claim in Shellito's counterclaim.

## C. Tortious Interference with Business Relations

Next, Shellito's counterclaim alleges that J&J Magnet and its representatives' interference prevented Shellito from conducting business freely, leading to lost clients, sponsorships, and business opportunities. Doc. 69 at 3. To establish a claim for tortious interference with a business relationship under South Dakota law,

> a plaintiff must prove:
>
> 1. [T]he existence of a valid business relationship or expectancy;
> 2. knowledge by the interferer of the relationship or expectancy;
> 3. an intentional and unjustified act of interference on the part of the interferer;
> 4. proof that the interference caused the harm sustained; and,
> 5. damages to the party whose relationship or expectancy was disrupted.

11

Selle, 786 N.W.2d at 753 (quoting Dykstra v. Page Holding Co., 766 N.W.2d 491, 499 (S.D. 2009)). When determining the third element on the propriety of the act of alleged interference, courts consider "the nature of the actor's conduct," "the actor's motive," "the interests of the other with which the actor's conduct interferes," "the interests sought to be advanced by the actor," "the social interests in protecting the freedom of action of the actor and the contractual interests of the other," "the proximity or remoteness of the actor's conduct to the interference," and "the relations between the parties." Id. (citing Dykstra, 766 N.W.2d at 499–500). To assert this claim, a plaintiff must show an effect on a relationship with an identifiable third party, not just the general public. Table Steaks, 650 N.W.2d at 835 ("The public at large does not constitute an identifiable third person.").

Again, Shellito "has an affirmative burden to designate specific facts creating a triable controversy," as Shellito would bear the burden at trial of showing (1) the existence of a valid business relationship or expectancy between him and an identifiable third party; (2) J&J Magnet and its representatives' knowledge of that relationship or expectancy; (3) an intentional and unjustified act by J&J Magnet and its representatives; (4) proof that their interference caused the harm alleged by Shellito; and (5) damages. See Garden, 719 F.3d at 906; Selle, 786 N.W.2d at 753. Because Shellito has failed to come forward with any evidence on this issue, summary judgment in favor of the Counterclaim Defendants on the tortious interference claim is appropriate. See Garden, 719 F.3d at 906; Crotty, 455 F.3d at 831.

### D. Intentional Infliction of Emotional Distress

The third and final count in Shellito's counterclaim alleges that J&J Magnet and its representatives' "persistent harassment and interference have caused [Shellito] severe emotional suffering, including depression, inability to work, and drastic health decline." Doc. 69 at 3. To

establish a claim for intentional infliction of emotional distress under South Dakota law, a plaintiff must prove

> (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

Harvey, 906 N.W.2d at 394 (quoting Anderson v. First Century Fed. Credit Union, 738 N.W.2d 40, 51–52 (S.D. 2007)). For the first element, "[t]he conduct necessary . . . must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community," and "[l]iability for this tort will not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Id. at 395 (cleaned up and citation omitted). "[T]he tort of intentional infliction of emotional distress includes liability on the part of the defendant for reckless conduct resulting in emotional distress." Johnson ex rel. Est. of Johnson v. Weber, 898 N.W.2d 718, 726 (S.D. 2017) (quoting Petersen v. Sioux Valley Hosp. Ass'n, 491 N.W.2d 467, 469 (S.D. 1992)).

Shellito "has an affirmative burden to designate specific facts creating a triable controversy," as Shellito would bear the burden at trial of showing that (1) an act by J&J Magnet and its representatives amounted to extreme and outrageous conduct, which was utterly intolerable in a civilized society; (2) J&J Magnet and its representatives' intent to cause Shellito severe emotional distress; (3) the act by J&J Magnet and its representatives was the cause in-fact of Shellito's distress; and (4) Shellito suffered an extreme disabling emotional response to J&J Magnet and its representatives' conduct. See Garden, 719 F.3d at 906; Selle, 786 N.W.2d at 753. Because Shellito has failed to come forward with any evidence on this issue, summary judgment

in favor of the Counterclaim Defendnats on the intentional infliction of emotional distress claim is appropriate. See Garden, 719 F.3d at 906; Crotty, 455 F.3d at 831.

## IV.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Counterclaim Defendants' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment, Doc. 85, is granted. It is further

ORDERED that Defendant Manny Shellito's Counterclaim, Doc. 69, is dismissed with prejudice.

DATED this __6th__ day of May, 2026.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE

14